UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION


FILED
APR 30 2018

| | |
|---|---|
| KATHY FISCHER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JOSH HOVEN, IN HIS INDIVIDUAL CAPACITY; BARRY HILLESTAD, IN HIS INDIVIDUAL CAPACITY; AND DAY COUNTY, A SOUTH DAKOTA POLITICAL SUBDIVISION, ITS AGENTS, SUBSIDIARIES AND EMPLOYEES;<br><br>　　　　Defendants. | 1:16-CV-01056-CBK<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 contending defendant Josh Hoven violated her Constitutional rights when he used excessive force against her. She claims defendants Barry Hillestad and Day County failed to train or supervise defendant Hoven.

Defendants filed a motion for summary judgment. Defendant Hoven contends that he is entitled to qualified immunity from damages. Defendant Hillestad and Day County contend that plaintiff's claims against them must be dismissed because defendant Hoven is entitled to qualified immunity from damages. Defendant Hillestad further contends that he is not subject to vicarious liability for the alleged Constitutional deprivation. Finally, defendant Day County contends that plaintiff cannot establish her failure to train claim. Defendants contend that plaintiff was injured, not as a result of defendant Hoven's use of force or lack of training, but instead because she was "highly intoxicated" and "fell face first to the ground without attempting to break her fall" when defendant Hoven used force in response to her resisting arrest.

**Summary Judgment.**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 913 (8th Cir. 2013). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

> The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [its] favor." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). "Factual disputes that are irrelevant or unnecessary will not be counted," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, *id.* at 252, 106 S.Ct. 2505.

Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F.3d 824, 827 (8th Cir. 2003). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. " Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005).

2

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

**Qualified Immunity.**

Qualified immunity is a doctrine that "shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Franklin v. Peterson, 878 F.3d 631, 634-35 (8th Cir. 2017) (*quoting* Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982))).

> Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Because it protects officials from the burden of defending insubstantial claims, as well as from damage liability, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting* Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*)).

Franklin v. Peterson, 878 F.3d at 635.

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is

3

> resolved, discovery should not be allowed. If the law was clearly
> established, the immunity defense ordinarily should fail, since a
> reasonably competent public official should know the law governing
> his conduct. Nevertheless, if the official pleading the defense claims
> extraordinary circumstances and can prove that he neither knew nor
> should have known of the relevant legal standard, the defense should
> be sustained. But again, the defense would turn primarily on
> objective factors.

Harlow v. Fitzgerald, 457 U.S. at 818–19, 102 S. Ct. at 2738.

In determining whether a defendant is entitled to qualified immunity this Court must determine whether "(1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of violation." Rogers v. King, 885 F.3d 1118, 1121 (8th Cir. 2018). *See also* Raines v. Counseling Assocs., Inc., 883 F.3d 1071, 1074 (8th Cir. 2018), as corrected (Mar. 6, 2018). "To deny qualified immunity, the answer to both questions must be yes." Cravener v. Shuster, 885 F.3d 1135, 1138 (8th Cir. 2018). Either inquiry may be addressed first. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). Nonetheless, it may be difficult in the context of the Fourth Amendment to determine whether a right to be free from excessive force has been clearly established without first determining whether the defendant's alleged conduct constitutes excessive force. *See Id.*

**Excessive Force.**

The first question for this Court is whether Officer Hoven used excessive force when he performed the straight arm bar takedown under the circumstances present. Excessive force claims arising in the context of an arrest are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d (1989). The United States Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. at 396, 109 S. Ct. at 1872. "[T]he question whether an officer has used excessive force 'requires careful attention to the facts and circumstances

of each particular case." Kisela v. Hughes, 584 U.S. \_\_\_\_, \_\_\_\_, 38 S. Ct. 1148, 1152 (2018). "As to the excessive force claim, the Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Franklin v. Peterson, 878 F.3d at 635 (*quoting* Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Summary judgment in favor of a defendant based upon qualified immunity is appropriate only if the facts, "viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right." Mountain Pure, LLC v. Roberts, 814 F.3d 928, 932 (8th Cir. 2016). The undisputed material facts necessary to determine whether defendant used excessive force in this case are set forth below.

On September 12, 2015, Kathy Fischer and her friend, Sue Clynick, were drinking alcohol in Andover, South Dakota. The pair had consumed nearly all of three bottles of wine, with Fisher drinking at least one and one half bottles. Both Clynick and Fisher were intoxicated. Fisher and Clynick went to the Andover Bar despite the fact that the owner had previously told Clynick she was not allowed in the bar. Fisher was aware that Clynick was not welcome at the Andover Bar.

The bar owner told Clynick to leave but she refused. He called law enforcement to have Clynick escorted out of the bar. Deputy Hoven was contacted by dispatch regarding an unwanted person that needed to be removed from the Andover Bar. Upon arriving at the Bar, Hoven met the owner who reported that Clynick was disruptive and needed to leave the bar. Hoven approached Clynick and asked her to accompany him outside. Once outside Hoven told Clynick that the bar owner did not want her at the bar and that she needed to leave. Clynick wanted to communicate to Fisher that she was leaving but Hoven told Clynick she could not return to the bar.

Hoven returned to the bar and spoke to Fisher. Fisher accompanied Hoven out of the bar to where Clynick was waiting. Fisher began yelling at Deputy Hoven, expressing

5

that they had a right to be there. Fisher returned to the bar and voiced her displeasure to the bar owner at Clynick's removal from the bar.

Clynick continued to talk to Deputy Hoven outside the bar, primarily about the bar owner's unfair reason for banning her from the bar. While Deputy Hoven was still waiting for Clynick to leave, the bar owner came outside to report to Deputy Hoven that he also wanted Fisher removed from the bar. Deputy Hoven went into the bar and told Fischer that the bar owner wanted her to leave. Fisher became upset, began yelling, said she was not leaving, and walked outside to the bar's patio area. Deputy Hoven followed her. Deputy Hoven told Fisher again that she needed to leave. Fisher did not obey but continued to argue with Deputy Hoven and walked away.

Fischer recalls talking to Deputy Hoven on the patio but does not recall anything that transpired between her and Deputy Hoven after that. In fact, Fisher does not even remember initially accompanying Deputy Hoven out of the bar and re-entering the bar.

Deputy Hoven walked over to Fisher, took a wine glass from her that she was holding, broke it by either putting it on the railing or smashing it on the railing, and threw it in the garbage. Deputy Hoven grabbed one of Fisher's arms, put her in the escort position, and walked her out of the fenced patio area to his vehicle, which was near the sidewalk in front of the bar. Clynick was still standing outside the bar and Deputy Hoven told them both to leave. Fisher continued yelling at the officer that he could not kick them out of the bar.

Clynick and Fisher started walking across the street when Fisher turned and walked back towards Deputy Hoven with her arms moving and yelling about being ejected. Fisher put her hand on Deputy Hoven's shoulder. Deputy Hoven grabbed Fisher's left arm, moved her into the escort position and put her against his vehicle. Deputy Hoven told Fisher she was under arrest for disorderly conduct. Fisher continued to yell at the officer and Clynick stepped towards the officer. Deputy Hoven stepped toward Clynick with his right hand extended into Clynick's shoulder and Clynick fell to the ground. Clynick began screaming. Deputy Hoven turned back to Fisher, who he still had by the wrist with her arm behind her back and reached for his handcuffs. Fisher

6

turned to her left toward Deputy Hoven at which time Deputy Hoven executed the straight arm bar takedown on Fisher to attempt to gain control of her. Deputy Hoven still had his left hand on Fisher's left wrist. Deputy Hoven put his right hand on Fisher's tricep above her elbow and below her shoulder and stepped back. Fisher went to the ground face first and Deputy Hoven handcuffed her. When he rolled her over he saw blood on her face and he took the handcuffs off and sat her up.

Fisher was taken by ambulance to an emergency room in Aberdeen, South Dakota. Fisher suffered a broken nose, a facial cut, a broken tooth, and broken bones in her right arm and hand.

Fisher contends that her fall was the result of the excessive force employed by Deputy Hoven. Defendants contend that plaintiff was intoxicated, lost her balance, and fell to the ground without using her free arm to prevent her own injury. Fisher, as the non-moving party, must proffer some evidence upon which this Court can conclude that a factual issue exists concerning the mechanism of her injury. Fisher's claim as to the amount of force employed is hindered by her current lack of memory of the facts of the events in question. Fisher's lack of memory may be explained, in part, by the extent of her intoxication.

Fisher proffered deposition and other evidence contending that Deputy Hoven was getting angry and frustrated at Fisher and Clynick as the events unfolded and that he took Fisher's wine glass from her and smashed it before escorting her out of the bar. Deputy Hoven's underlying intent or motivation is irrelevant. Franklin v. Peterson, *supra*. Fisher also claims that she was not intending to resist or attack Deputy Hoven, and that Fisher's actions were calm when she was initially in the bar and when she returned to the bar after she spoke with Deputy Hoven outside the bar the first time. The latter claim is belied by evidence that Fisher came back into the bar and began yelling at the bar owner about Clynick's expulsion. In any event, those facts are not material. Even if Fisher's motive was innocent, Deputy Hoven "reasonably could have interpreted [Fisher's] actions as resistance and responded with an amount of force that was reasonable to effect the arrest." Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012). Clynick's claim that

7

she did not charge Deputy Hoven but was merely explaining something to him is also not material for the purposes of summary judgment. Clearly, Clynick had also walked back towards Deputy Hoven and came within arm distance, so close that Deputy Hoven could push Clynick away while he was still holding onto Fisher. It is also not material whether or not Deputy Hoven told Fisher to stop resisting arrest before employing force.

Determining whether Deputy Hoven's use of the straight arm bar technique under the circumstances present in this case amounted to excessive force in violation of the Fourth Amendment requires me to determine whether Hoven's actions were "objectively reasonable" in light of the facts and circumstances confronting him. Graham v. Connor, 490 U.S at 397, 109 S.Ct. at 1872.

The United States Supreme Court instructs:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain,

> and rapidly evolving—about the amount of force that is necessary in
> a particular situation.
>
> As in other Fourth Amendment contexts, however, the
> "reasonableness" inquiry in an excessive force case is an objective
> one: the question is whether the officers' actions are "objectively
> reasonable" in light of the facts and circumstances confronting them,
> without regard to their underlying intent or motivation.

Graham v. Connor, 490 U.S. 386, 396–99, 109 S. Ct. 1865, 1871–73, 104 L. Ed. 2d 443 (1989) (internal citations omitted). "[W]hether the officer's use of force was constitutionally excessive is an issue of law for the court." Frederick v. Motsinger, 873 F.3d 641, 646 (8th Cir. 2017).

For the purposes of determining whether a Fourth Amendment excessive force violation occurred, the material facts to consider are the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether she was actively resisting arrest or attempting to evade arrest by flight. Those facts will be determined in a light most favorable to the plaintiff.

The claimed excessive force used in this case was used to effect an arrest for the crime of disorderly conduct, arguably not a severe crime. Nonetheless, construing the facts in the light most favorable to plaintiff, the plaintiff posed an immediate threat to the safety of the officer as she was actively resisting arrest. Use of some force was reasonable to gain control of an unruly and disorderly arrestee. Fisher repeatedly refused Deputy Hoven's requests during their encounter and, when he told her he was placing her under arrest, Clynick came toward him and Fisher turned around toward him. The use of a standard defensive tactic is reasonable to control an individual who refuses to comply with reasonable orders. Cravener v. Shuster, 885 F.3d at 1139. The Eighth Circuit has held that the use of an arm bar maneuver, "a technique designed to throw [the arrestee] off balance and take him to the floor," is objectively reasonable to subdue an arrestee who "refused to comply with directions, loudly abused the correctional officers, and aggressively leapt toward" the officer. Hicks v. Norwood, 640 F.3d 839, 841 (8th Cir. 2011). *See also* Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017)

(executing a spin takedown for an arrestee who appeared to be resisting is reasonable and does not violate a constitutional right).

Fisher relies upon the extent of her injuries to support her claim that Deputy Hoven "threw" her to the ground and that such force necessarily was excessive. The plethora of excessive force cases show that the use of arm bar techniques to gain control of an arrestee often result in injury to the arrestee. The fact that injury occurred does not necessarily imply that the force used was excessive under the circumstances. Once defendant proffered undisputed facts that he employed a takedown technique which resulted in the desired outcome – Fisher went to the ground – the burden shifted to Fisher to present affirmative evidence showing that a genuine issue of material fact exists whether her injuries could have occurred merely by proper use of the arm bar technique. She did not do so. The case law tends to show that proper use of an arm bar takedown can in fact result in serious injury to the arrestee. Fisher did not meet her burden to show that the extent of her injuries may have been related to something other than the use of a takedown technique on an intoxicated individual.

One significant problem for plaintiff is that she has no version of the facts because of lack of memory. Thus, the only version of the facts leading up to the force used comes from Hoven. The Court is not required, of course, to construe the "facts" in his favor.

There is no genuine issue of material fact that the force used in this case was not excessive. Deputy Hoven is entitled to summary judgment on his claim of qualified immunity.

**Clearly Established.**

Whether or not the amount of force used was excessive, Hoven may nonetheless be entitled to qualified immunity if the law was not clearly established in September 2015 to the effect that the straight arm bar technique employed by defendant in the context presented constituted excessive force. The United States Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. \_\_\_\_, \_\_\_\_, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (*quoting* Ashcroft v. al–Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074,

2084, 179 L.Ed.2d 1149 (2011)). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 584 U.S. at \_\_\_\_, 138 S.Ct. at 1152. Whether the law is clearly established is a legal question for the Court. Ehlers v. Rapid City, 846 F.3d 1002, 1012 at n. 2 (8th Cir. 2017).

This court has not found, and plaintiff has not cited, any clearly established Eighth Circuit precedent that the use of the straight arm bar technique to accomplish the arrest of an intoxicated individual resisting arrest for disorderly conduct constitutes excessive force. Plaintiff's right, if any, to be free from the use of the straight arm bar technique under the circumstances present in this case was not "sufficiently definite that any reasonable official in defendant's shoes would have understood that he was violating it." Kissela v. Hughes, 584 U.S. at \_\_\_\_, 138 S.C. at 1153.

**Monell Claim.**

Plaintiff sued defendants Hillestad and Day County under a failure to train theory. Such claims are called Monell claims after Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Monell does not authorize an award of damages against a municipal corporation based on the actions of one of its officers when there is a finding that the officer inflicted no constitutional harm. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986). A finding that Deputy Hoven did not violate Fisher's constitutional rights because he did not use excessive force against her precludes any liability of defendants Hillestad and Day County for failure to train to prevent a constitutional violation. McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). *See also* Turpin v. County of Rock, 262 F.3d 779, 784 (8th Cir. 2001) (where deputy granted summary judgment on qualified-immunity grounds, the county was likewise entitled to summary judgment).

Defendants Hillestad and Day County are also entitled to summary judgment.

11

Now, therefore,

IT IS ORDERED that defendants' motion, Doc. 13, for summary judgment is granted. Judgment shall be entered in favor of defendants and against plaintiff without costs.

DATED this 30th day of April, 2018.

BY THE COURT:

*Charles B Kornmann*
CHARLES B. KORNMANN
United States District Judge